

### IN THE ADAIR COUNTY DISTRICT COURT
### STATE OF OKLAHOMA

ADAIR COUNTY DISTRICT COURT FILED
STILWELL, OK
MAR 0 5 2020
NICHOLE COOPER
COURT CLERK

MICHAEL W. JONES, )
    Plaintiff, )
 )
vs. )
 )   Case No. CJ-2020-08
CITY OF STILWELL, a municipal )
corporation, and TERRY BUTLER, in )   **JURY TRIAL DEMANDED**
his individual capacity, LARRY )   **ATTORNEY LIEN CLAIMED**
NETTLES, in his individual capacity, )
NORMAN ISAACS, in his individual
capacity, DEBBIE JOHNSON, in her
individual capacity, and JIM SPRAY, in
his individual capacity,
    **Defendants.**

### PETITION

COMES NOW, Plaintiff, Michael W. Jones, by and through his attorney of record, and for

his causes of action against Defendant City of Stilwell, Defendant Terry Butler, and Defendant

Larry Nettles, Defendant Norman Isaac, Defendant Debbie Johnson, and Defendant Jim Spray,

alleges and states as follows:

### VENUE AND JURISDICTION

1. Plaintiff Michael W. Jones is a resident of the City of Stilwell, the County of Adair, State of

   Oklahoma.

2. Defendant City of Stilwell is a municipal corporation located in the County of Adair, State of

   Oklahoma.

3. Terry Butler is an individual, who was employed as Street Commissioner and, at all relevant

   times, was Plaintiff's supervisor, and on information and belief, is a resident of the County of

   Adair, State of Oklahoma.

# EXHIBIT 1

1

4. Larry Nettles is an individual and who, at all relevant times, was employed as City Clerk for the City of Stilwell, and on information and belief, is a resident of County of Adair, State of Oklahoma.

5. Norman Isaacs is an individual who, at all relevant times, was a member of the City of Stilwell's city council, and on information and belief, is a resident of the County of Adair, State of Oklahoma.

6. Debbie Johnson is an individual who, at all relevant times, was a member of the City of Stilwell's city council, and on information and belief, is a resident of the County of Adair, State of Oklahoma.

7. Jim Spray is an individual who, at all relevant times, was the acting Mayor and a member of Stilwell's city council, and on information and belief, is a resident of the County of Adair, Stt of Oklahoma.

8. All actions of Defendants complained of occurred in the City of Stilwell, County of Adair, State of Oklahoma.

9. A tort claim from Plaintiff to Defendant was received by Defendant on June 12, 2019, and deemed denied on September 10, 2019.

10. This action has been timely filed within 180 days of the deemed denied date.

11. Jurisdiction and venue are proper in this court.

## FACTS

12. Plaintiff Michael W. Jones ("Jones" or "Plaintiff") was employed by the Defendant City of Stilwell ("Stilwell" or "Defendant" or "City") from approximately January 7, 1992 until his discharge June 26, 2018.

13. During his 28 years of employment, Plaintiff had only been reprimanded three times for minor occurrences, until May 2018.

14. In early 2018, Plaintiff became aware that his supervisor, Terry Butler, was using City materials, City property, and City employees to work on his personal vehicle.

15. On or about March 21, 2018, Plaintiff questioned Butler about this practice, but Butler did not provide an explanation, nor did he stop the practice.

16. Plaintiff also observed Defendant Butler with what he believed to be city materials on Butler's personal property.

17. On or around April 10, 2018, Butler called an employee meeting and told the employees that there was a snitch in the department and if he found out who, he would break their legs and beat them with a bat.

18. On or about May 1, 2018, Plaintiff was disciplined for telling employees they did not have to wear hardhats.

19. Plaintiff, however, had actually told the employees that hard hats were not required while driving a backhoe, which was true.

20. A mandatory City policy for wearing hard hats at all times was not in place.

21. In early May 2018, Butler was out of the office and left Plaintiff in charge.

22. Prior to his leaving, Butler directed City employees to sand and paint his personal vehicle while he was gone.

23. Upon learning of this, Plaintiff told the employees to move the truck outside and they were not to work on personal vehicles on City time.

24. On or about May 11, 2018, after discovering that Plaintiff had told employees not to work on his vehicle, Plaintiff's supervisor, Terry Butler, wrote up Plaintiff with several different reprimands for actions that allegedly happened months earlier.

25. Specifically, Plaintiff was reprimanded for not wearing a uniform for the last two years or more, even though it had not been mandatory to wear a uniform.

26. Plaintiff was also reprimanded on or about May 11, 2018, for changing work orders on January 12, 2018, without Butler's permission, but no other details were provided.

27. Plaintiff was not reprimanded in January for any alleged infraction.

28. Plaintiff was also reprimanded at for an incident in April 2018, when Butler told Plaintiff not to do personal business on City time, stating that it was the most recent of several times.

29. Plaintiff, however, had used, and was required to use, his personal cell phone to order parts for his work with the City if he was out in the field.

30. Plaintiff did not have a cell phone issued to him by the City.

31. Plaintiff was never told not to use his personal phone for city business and, in fact, told all employees that if he called them on their cell phones, they had five minutes to return his call.

32. Plaintiff was also reprimanded for stopping another City employee from finishing a job.

33. In early April 2018, Plaintiff had been sent to the City cemetery to correct a fence project that another new City employee, Buddy Wallace, had been working on.

34. Mr. Wallace was not happy that Plaintiff had been sent to correct his work.

35. Later in April, Plaintiff was again sent out to the fence project to check on the footage being dug for the fence.

36. Plaintiff stopped the workers, including Mr. Wallace, and measured the hole that was being dug.

4

37. Plaintiff did stop them because the hole was not being dug to the correct proportions and would result in the use of too much concrete, which would cost the City an excessive amount of money.

38. Finally, on the May 11, 2018 reprimand, Plaintiff was disciplined for letting his CDL license expire.

39. Plaintiff was not aware his license had expired, and he was not required to have a CDL license for his job as an equipment operator.

40. Plaintiff discovered his license had expired when he went to the City offices to renew his insurance.

41. When Plaintiff tried to renew his license at the motor vehicle office in Stilwell, he discovered that the examiner was not in town because of illness and wasn't expected back for two weeks and he would have to go to Tahlequah.

42. Plaintiff told his supervisor Butler that he would need to go to Tahlequah to renew his license, but Butler told him to drive to Durant to pick up dumpsters instead with another worker, whom Butler knew did not have a CDL, and told them to take a City truck, even though he knew that Plaintiff's license was expired.

43. At times, he would have to drive a trash truck in an emergency that required a CDL license to operate.

44. On information and belief, Plaintiff had not driven any vehicle that required a CDL license while his license was expired until he was directed to drive a City truck by Defendant Butler.

45. Butler told Plaintiff that he wanted him to wait until the examiner returned to the Stilwell office for him to renew his license.

46. Plaintiff did renew his license as soon as his supervisor allowed him to do so, as he would be required to take off work to do so.

47. Defendant Nettles requested the licensing examiner to provide an affidavit that Plaintiff's license was expired.

48. The licensing examiner refused to do so, as Plaintiff's license had been renewed.

49. On May 29, 2018, Butler reprimanded Plaintiff, which was dated May 18, 2018, and suspended him for 15 days for allegedly talking about another employee's mother in a "sexual" way.

50. On information and belief, other employees gave false statements, as the alleged incident did not happen.

51. The employee who gave a written statement is related to Butler and the other employees identified as witnesses were not there.

52. Defendant Spray said that he had also been part of the alleged investigation.

53. On or about May 29, 2018, Butler also reprimanded Plaintiff for not calling in to tell him Plaintiff would be late.

54. Plaintiff was on vacation previously approved by Butler and had been on vacation for several days.

55. Butler changed records to indicate that Plaintiff's vacation was not approved and that he had no knowledge of it.

56. Defendant Nettles then changed Plaintiff's time records to indicate none of his vacation was approved.

57. Plaintiff was accused by Defendant Nettles of falsifying time records related to Plaintiff's vacation.

58. Plaintiff was originally told his suspension was up on June 4, 2018.

59. When Plaintiff returned to work, his supervisor, Defendant Butler, changed Plaintiff's return date to June 20, 2018, and told to go home.

60. Plaintiff returned from being suspended on June 20, 2018.

61. On or about June 21, 2018, Plaintiff informed Defendants Norman Isaacs and Debbie Johnson, members of the Stilwell City Council, of the actions of Terry Butler, and that he was using City property, equipment and personnel to conduct his personal business.

62. On June 26, 2018, Plaintiff was fired, allegedly for "insubordination, neglect of duty, and causing a hostile work environment."

63. Plaintiff asked to be heard by the City Council on the July 2, 2018 council meeting.

64. Plaintiff's request was refused and the City Council, including Defendants Johnson and Isaacs, ratified Plaintiff's discharge.

65. Plaintiff had worked for the City of Stilwell for 28 years and had always performed his job duties satisfactorily.

66. After discovering that Terry Butler was using City property, equipment and personnel to conduct his personnel business and confronting Butler about this, Plaintiff began receiving discipline and was suspended.

67. Plaintiff is a Native American of Choctaw/Cherokee heritage.

68. Plaintiff was the senior employee with Defendant in his department.

69. Plaintiff was bypassed on each promotion opportunity for less tenured, and less qualified people, who were also Caucasian, including Defendant Terry Butler.

70. Plaintiff was told by his supervisor, Defendant Butler, that he and other Native American employees could not talk in their native language at work.

71. No business reason was given for this directive.

7

72. Plaintiff believes that his Native American heritage played a part in the actions which led up to his discharge.

73. Plaintiff asked for review of his disciplinary actions pursuant to Defendant City's employee policies.

74. On information and belief, Defendant Nettles purposely failed to address Plaintiff's grievances in a timely manner by destroying his grievances and not forwarding them to the Mayor, pursuant to city policies.

75. When Plaintiff finally was given the opportunity to meet with Defendant Spray, the acting Mayor, he was not allowed to complete the grievance process, but was discharged by Defendant Spray.

76. On July 2, 2018, the Defendant City Council ratified Plaintiff's termination.

77. Plaintiff believes that he was discharged after 28 years because he reported this wrongdoing and because of his Native American heritage.

## FIRST CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1983 FOR ASSERTION OF HIS FIRST AMENDMENT RIGHTS AGAINST THE INDIVIDUAL DEFENDANTS

78. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

79. Plaintiff was retaliated against as a result of his decision to speak out against Defendant Butler's wrongdoing by conducting personal business utilizing City employees, City materials and City property.

80. Plaintiff not only spoke out to his supervisor, but also spoke out to individual members of the City Council, Defendants Isaacs and Johnson.

81. Speaking out by Plaintiff was a matter of public concern.

82. Plaintiff's complaints about the activities of his supervisor, Defendant Butler, were an exercise of his rights to free speech and the right to redress the government under the First Amendment to the United States Constitution and Article II, Section 22 of the Oklahoma Constitution.

83. The individual Defendants knew or should have known that Plaintiff was speaking out on matters of public concern relating to the conducting of a private business, utilizing City materials, property and employees, on the failure of the City to follow state and city law.

84. The individual Defendants, while acting under color of state law and city ordinances as employees of the City of Stilwell, took adverse employment action against the Plaintiff after he exercised his rights to free speech under the U.S. and Oklahoma Constitutions.

85. As a result of the conduct of individual Defendants, Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peach of mind as a result of Defendants' unlawful conduct, a reaction that any reasonable person would have under like circumstances, and has suffered adverse employment action.

86. Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendants for its wrongful conduct.

## SECOND CAUSE OF ACTION:   RETALIATION FOR WRONGFUL TERMINATION UNDER *BURK* AGAINST DEFENDANT CITY OF STILWELL

87. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

88. Plaintiff was an at-will employee of the Defendant City of Stilwell.

89. Plaintiff was involuntarily terminated from his employment with Defendant City of Stilwell.

90. Plaintiff's discharge was an adverse employment action.

91. When Oklahoma law does not provide for an adequate remedy at law to fully vindicate the rights of an employee, an employee has a right to prosecute a wrongful termination under *Burk*. See *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24.

92. Oklahoma has a clear and articulated policy against conflict of interest, use of taxpayer funds and resources for personal use, and embezzlement by municipal employees.

93. Plaintiff was retaliated against for trying to comply with Oklahoma's clear and articulated public policy related to conflict of interest, use of taxpayer funds and resources for personal use, and embezzlement by municipal employees.

94. As a result of Defendants' conduct, Plaintiff was forced to endure a hostile work environment, has lost wages and benefits, and sustained damage to his reputation and career and was ultimately terminated from his employment.

95. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

96. Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

## THIRD CAUSE OF ACTION: *BURK* TORT FOR VIOLATION OF THE OKLAHOMA CONSTITUTION

97. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

98. The Oklahoma Legislature has not provided a remedy at law or equity for retaliation based upon exercise of the right to free speech or government redress under the Oklahoma Constitution.

99. A *Burk* tort may be based upon violation of the free speech provision of the Oklahoma Constitution. *See Dixon v. Okla. Bd. of Veterinary Med. Examiners*, 2009 U.S. Dist.44249 *8-9.

100.   Oklahoma has a clear and articulated public policy that prohibits retaliation against an individual based upon the exercise of his lawful rights including his righty to be free from discrimination on the basis of his exercise of free speech and the right to redress the government. *See* Okla. Const. art. II, §§ 3, 22.

101.   Plaintiff exercised his right to freedom of speech and spoke out against Defendant on matters of public concern regarding Defendant Butler's use of City materials, employees, and property to conduct his private business.

102.   Plaintiff spoke out about these issues even though speaking out about the same posed great risk and detriment to his career and employment with Defendant City of Stilwell.

103.   Plaintiff's commitment to speaking out about matters of public concern resulted in Plaintiff's discharge by the City of Stilwell, in violation of his constitutional rights afforded to him under the Oklahoma Constitution.

104.   As a result of Defendants' conduct, Plaintiff was forced to endure a hostile work environment, has lost wages and benefits, ad sustained damage to his reputation and career and was ultimately terminated from his employment.

105.   Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

106.   Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

## FOURTH CAUSE OF ACTION:     CIVIL CONSPIRACY AGAINST THE INDIVIDUAL DEFENDANTS

107.   Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

108.   On information and belief, Defendant Butler, Nettles, Isaacs, Johnson, and Spray, acting in either their individual capacity and/or in their capacity as employees and elected officials of the City of Stilwell, jointly, unlawfully and illegally conspired to create a hostile work environment and to retaliate against Plaintiff, including discharging him for exercising his rights under the First Amendment of the U.S. Constitution and Article II, Sections 3 and 22 of the Oklahoma Constitution.

109.   The conduct of the Defendants is illegal and amounts to a civil conspiracy which is unlawful and gives rise to a claim for damages by the Plaintiff.

110.   As a result of the retaliation, Plaintiff was forced to endure a hostile work environment, lost time and benefits of employment and was terminated from his employment.

111.   As a result of the Defendants' conduct, Plaintiff has lost wages and benefits, suffered negligent an intentional emotional distress, and sustained damage to his reputation.

112.   As a direct and proximate result of the Defendants' conspiracy to deprive him of his civil rights under color of state law and retaliatory conduct, Plaintiff has suffered, and continues to suffer, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses.

113.   As a direct and proximate result of Defendants' conduct, Plaintiff has lost compensation and benefits of employment and such losses will continue in the future.

114.   Defendants' conduct was undertaken with malice and reckless indifference to the Plaintiff's rights.

## FIFTH CAUSE OF ACTION:     VIOLATION OF 42 U.S.C. § 1981

115.   Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

116.   Plaintiff is Native American, as an enrolled member of Cherokee tribe

117.   Plaintiff's appearance is darker complexion and speaks the Cherokee language.

118.   Plaintiff was told that he could not speak his native language at work.

119.   Plaintiff was by-passed for promotions, even though he had more experience and was more qualified for the positions.

120.   Plaintiff was ultimately discharged from his employment.

121.   On information and belief, Plaintiff's heritage was at least a factor in his termination from Defendant City of Stilwell.

122.   As a result of Defendants' conduct, Plaintiff was forced to endure a hostile work environment, has lost wages and benefits, ad sustained damage to his reputation and career and was ultimately terminated from his employment.

123.   Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

124.   Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

## SIXTH CAUSE OF ACTION: VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE U.S. AND OKLAHOMA CONSTITUTIONS

125.   Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

126. Pursuant to Defendant City of Stilwell's Employee Personnel Policy handbook, a grievance policy was in effect from at least May 2007.

127. Plaintiff attempted to use this procedure, which states that the Department Manger *will* bring complaints to the attention of the Mayor.

128. If the issue is not resolved, the employee *shall* submit his complaint in writing to the Department Manager.

129. The Department Manager has ten calendar days to attempt to resolve the issue, and if not resolved, a meeting will be set within ten calendar days with all department managers and the employee.

130. If complaint is still unresolved the Department Manager *shall* request a meeting with the employee and the Mayor within five working days.

131. If not resolved, the employee may request an audience with the City Council.

132. Plaintiff attempted to avail himself of the City grievance policy, but Defendants thwarted his efforts and then discharged him before he had the opportunity to speak to the full City Council.

133. The City Council, including Defendants Isaacs, Johnson, and Spray, refused to provide Plaintiff with the opportunity to address the City Council concerning his termination and his concerns as to the reasons for his termination.

134. As a result of the Defendants' conduct, Plaintiff has lost wages and benefits, suffered negligent an intentional emotional distress, and sustained damage to his reputation.

135. As a direct and proximate result of the Defendants' conspiracy to deprive him of his civil rights under color of state law and retaliatory conduct, Plaintiff has suffered, and continues to

suffer, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses.

136.   As a direct and proximate result of Defendants' conduct, Plaintiff has lost compensation and benefits of employment and such losses will continue in the future.

137.   Defendants' conduct was undertaken with malice and reckless indifference to the Plaintiff's rights.

WHEREFORE, Plaintiff, Michael W. Jones, respectfully requests that the Court enter judgment in his favor and against the Defendants, City of Stilwell, Terry Butler, Larry Nettles, Norman Isaacs, Defendant Debbie Johnson, and Defendant Jim Spray for the loss of his employment and benefits and damage to his reputation and award him the attorney fees and costs incurred in the prosecution of this action. Plaintiff further requests any and all other relief that the court deems just and equitable.

Respectfully submitted,

Patricia A. Podolec, OBA # 21325
Bussett Legal Group, PLLC
2201 N. Classen Blvd.
Oklahoma City, OK. 73106
Phone: 405-605-8073
Fax: 405-212-9112
E-mail: PPodolec@BussettLegal.com

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**